OPINION *Page 2 
{¶ 1} Appellant William Shade Miller appeals the May 14, 2007 Judgment Entry entered by the Licking County Court of Common Pleas, Juvenile Division, which approved and adopted the Magistrate's April 20, 2006 Decision, finding him delinquent by reason of committing a theft offense which would be a first degree misdemeanor if committed by an adult. Appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On February 1, 2006, Patrolman James Goodman with the Newark Police Department filed a Complaint in the Licking County Court of Common Pleas, Juvenile Court Division, alleging Appellant was a delinquent child by reason of committing a theft which would be a felony of the fifth degree if committed by an adult. Appellant was held at the Multi-County Juvenile Detention Center during the pendency of the matter. Appellant entered a plea of denial to the charge at his initial appearance on February 9, 2006.
 {¶ 3} The following evidence was adduced at the adjudicatory hearing conducted by the Magistrate on April 19, 2006. Officer Shawn Henry with the Newark Police Department testified he works as a DARE officer and a school resource officer at C-Tec, a vocational high school. As a school resource officer, Henry deals with any kind of legal issues confronting the school, including thefts, drug complaints, and accidents. On January 9, 2006, Officer Henry investigated a theft of a student's tools. As part of his investigation, Officer Henry spoke with Sherilyn Moore, the mother of the victim, Joshua Leeper; several teachers; and 15 to 20 students, however, no one seemed to know anything about the stolen tools. Moore had provided Officer Henry *Page 3 
with information from Leeper who was then in juvenile detention. Leeper told his mother another student at C-Tec, Adrian Rhodeback, who was also in detention, informed him several students had taken his tools. Officer Henry subsequently called Officers Goodman and Riley to assist in the investigation.
 {¶ 4} Patrolman James Goodman testified he was instructed by his sergeant to follow up on Officer Henry's investigation at the school. Officers Goodman and Riley proceeded with the investigation, which lead to the arrest of Brian Whitcraft, Appellant's co-defendant. During their first interview with Whitcraft, the young man told the officers he and Appellant stole Leeper's tools. Whitcraft subsequently told Officer Goodman another student, Michelle Hensley, was also involved. Whitcraft explained the three of them divvied up the tools and hid the items in their respective book bags. Officer Goodman testified Whitcraft and Hensley detailed how they completed the theft on a day a substitute teacher was in the classroom. Officer Goodman acknowledged Whitcraft and Hensley originally denied any knowledge of the stolen tools, however, after being read their Miranda rights and following their arrests, both students admitted to their involvement in the theft, and also implicated Appellant.
 {¶ 5} Joshua Leeper testified he was in the auto body program at C-Tec until he was arrested on a first degree felony on November 20, 2005. While in the detention center, Leeper met Adrian Rhodeback, a fellow student at C-Tec. Based upon his conversations with Rhodeback, Leeper asked Moore to check on the tools he kept in the auto body classroom at C-Tec. Moore subsequently found all of Leeper's tools missing. Leeper described his tool chest and tools, noting Appellant's tool chest was "identical". Leeper could not place a value on the tools. *Page 4 
 {¶ 6} Adrian Rhodeback testified he met Leeper while he was incarcerated at the detention center. Rhodeback recalled, during conversations with other people in the detention center, Leeper's name was mentioned. Rhodeback recalled, during the second week of December, 2005, prior to his arrest, he spent the night at Appellant's house. Appellant told Rhodeback one of his classmates was in jail and he had some of the student's tools. Leeper was the individual about whom Appellant spoke. Appellant told Rhodeback he and another guy "busted open the toolbox". Tr. at 70. After meeting Leeper at the detention center, Rhodeback advised Leeper of the conversation he had had with Appellant. On cross-examination, Rhodeback conceded Appellant never actually told him he [Appellant] took the tools, but explained he [Rhodeback] assumed that was the case. When the trial court asked him to clarify, Rhodeback explained Appellant had told him he had tools belonging to Leeper. Appellant also told him he [Appellant] had acquired the tools by breaking into Leeper's toolbox.
 {¶ 7} Sherilyn Moore testified, on January 6, 2006, she proceeded to C-Tec to pick up Leeper's tools and put them in storage because her son had informed her he was told his tools were missing. The teacher, David Finnegan, brought Leeper's toolbox to Moore. When they looked at it, a bar on the front, which keeps it locked, was damaged. Moore and Finnegan opened the toolbox and found it completely empty. Moore stated she had purchased a 263-piece Craftsman set from Sears for $499.00. Leeper also had additional tools, which were also missing. Moore valued the tools at over $750.00. Moore produced a receipt from Sears, indicating a purchase of $529.98, which she explained represented the 263-piece set as well as the toolbox. Moore also provided a receipt from Harbor Freight for $74.67, of which approximately $32.00 was *Page 5 
for tools. Moore stated she spent another $50.99 at Harbor Freight for a dolly set, but did not have a receipt. Moore noted the toolbox was currently in her possession, but it was damaged.
 {¶ 8} Michelle Hensley testified she is a student at C-Tec taking auto body collision classes. Hensley knew Leeper as he dated one of her friends. When she originally spoke with police, Hensley denied any knowledge of the stolen tools, however, she subsequently contacted the police, acknowledged her involvement in the theft, and implicated two other classmates. Hensley recalled, sometime between Thanksgiving break and Christmas, 2005, she, Whitcraft and Appellant decided to take Leeper's tools. Appellant twisted the toolbox lock bar bending it far enough to open the drawers, pulled out the drawers, and started placing tools in his book bag. Hensley recalled holding Appellant's bag open while he placed the tools inside it. Both Hensley and Whitcraft brought the tools they had taken to their own homes. Hensley knew Appellant had removed the tools from school, but had no idea what he had done with the items. Hensley explained she initially denied knowledge of the theft to the police because Appellant told her to do so.
 {¶ 9} Brian Whitcraft testified, when he originally spoke to police on January 9, 2006, he denied any knowledge of the theft of Leeper's tools, but subsequently revealed his involvement. Whitcraft recalled he, Hensley, and Appellant were in auto collision repair lab when they switched the placement of Leeper's toolbox and Appellant's toolbox, as the toolboxes looked the same. Appellant opened the tool box by bending a metal rod on the front which keeps it locked. After gaining access to the tools, Whitcraft, Hensley and Appellant placed the tools in their book bags. Whitcraft stated he took a *Page 6 
set of wrenches, a ratchet, and a drill; Hensley took two dollies; and Appellant took the remainder of the tools. Whitcraft's car was not at the vocational school, as he had driven to Northridge High and then taken the bus to C-Tec. Whitcraft could not recall whether Appellant's vehicle was at C-Tec. After the three stole the tools, they decided not to say anything, thinking they would probably not get caught.
 {¶ 10} Scott Johnson, a junior in the diesel mechanics program at C-Tec, testified on Appellant's behalf. Johnson recalled he and Appellant were working on a vehicle in the autocollision repair lab when he observed Whitcraft and Hensley carrying some tools into the paint booth. A short time later, Whitcraft and Hensley exited the paint booth with book bags. They placed the book bags in Whitcraft's truck, which was in the lab that day, and immediately drove the truck out of the area. Johnson noted Appellant was with him the entire time. Johnson conceded he did not see Whitcraft and Hensley take any tools from a specific toolbox, but assumed the tools they brought into the paint booth did not belong to them based upon their behavior, which he described as suspicious.
 {¶ 11} Appellant testified on his own behalf, stating, sometime between Thanksgiving break and the early part of December, 2005, he took his toolbox home in order to work on his own vehicle as well as do a side job his teacher had arranged for him. Appellant recalled, in mid-December, 2005, he and Johnson were working on a truck while Whitcraft was installing speakers and lights on his own truck. At one point during the lab, Appellant asked Whitcraft if he could borrow a hammer as his tools were already at his house. Appellant denied taking any of Leeper's tools, adding, based upon *Page 7 
Whitcraft's and Hensley's testimony about which tools they took and the number of tools Leeper actually had, the remaining items he allegedly took would never fit inside his book bag.
 {¶ 12} Following the parties' closing arguments, the magistrate stated on the record, it was not convinced beyond a reasonable doubt the value of the property involved was over $500. However, the magistrate was convinced beyond a reasonable doubt Appellant was one of the thieves involved in stealing the property. Accordingly, the trial court amended the offense from a felony to a first degree misdemeanor. At disposition the following day, the magistrate placed Appellant on probation and ordered he paid one-third of the total value of the tools as restitution.
 {¶ 13} The magistrate issued his decision on April 20, 2006, finding the State had proof beyond a reasonable doubt Appellant was delinquent by reason of committing the offense of theft, however, had failed to prove beyond a reasonable doubt the value of the property stolen was in excess of $500.00. Accordingly, the magistrate found Appellant delinquent for the offense of a misdemeanor theft. Appellant filed timely objections to the Magistrate's Decision. The last sentence of the objections reads, "The minor in this case will be seeking a transcript of the Trial and will supplement these objections once the transcript has been provided." Objections of the Minor Child, William Shade Miller at 4, unpaginated. Via Judgment Entry filed May 5, 2006, the trial court denied Appellant's objections, finding such dealt with issues of fact, and Appellant failed to provide a transcript or affidavit of the evidence to support his objections.
 {¶ 14} On May 15, 2006, Appellant filed a request for a transcript and a motion for reconsideration of the trial court's May 5, 2006 Judgment Entry. The trial court *Page 8 
sustained the motion for a transcript, but overruled the motion for reconsideration. Appellant filed a timely appeal from the trial court's original decision adopting the magistrate's decision as well as the judgment entry overruling his motion for reconsideration. This Court reversed and remanded the matter, finding the trial court did not afford Appellant a reasonable time in which to secure a transcript. In theMatter of: William Shade Miller, Minor Child, Licking App. No. 2006CA0059, 2006-Ohio-1435.
 {¶ 15} Upon remand, Appellant filed supplemental objections. Therein, Appellant alleged certain inconsistencies in the testimony of the State's witnesses and the lack of credibility of those witnesses. Appellant submits these inconsistencies were apparent from his own testimony and the testimony of Scott Johnson. The State filed a memorandum contra on May 10, 2007, as ordered by the Court in its April 12, 2007 Judgment Entry. Via Judgment Entry filed May 14, 2007, the trial court denied Appellant's objections, finding the record contained substantial, credible evidence which supported the Magistrate's Decision. The trial court approved and adopted the Magistrate's Decision as the order of the court.
 {¶ 16} It is from the trial court's May 14, 2007 Judgment Entry Appellant appeals, raising the following assignments of error:
 {¶ 17} "I. THE TRIAL COURT ERRED IN RELYING UPON A MEMORANDUM CONTRA TO DEFENDANT'S OBJECTIONS WHICH WERE NOT SERVED UPON COUNSEL FOR THE ALLEGED JUVENILE DELINQUENT AND WHICH CONTAINED MANY FACTUAL ERRORS. *Page 9 
 {¶ 18} "II. THE MAGISTRATE IN [SIC] THE TRIAL COURT ERRED IN FAILING TO FIND THERE WAS REASONABLE DOUBT IN UPHOLDING THE CONVICTION OF THE ALLEGED JUVENILE DELINQUENT, WILLIAM SHADE MILLER."
 I {¶ 19} In his first assignment of error, Appellant maintains the trial court erred in relying upon the State's memorandum contra to defendant's objections, as such was not served upon counsel for Appellant, and contained many factual errors.
 {¶ 20} Following this Court's remand order in In the Matter of:William Shade Miller, Minor Child, supra, the trial court issued a judgment entry, ordering Appellant to supplement his written objections by April 26, 2007, and instructing the State to file a memorandum in response by May 10, 2007. The docket indicates the State did, in fact, file its memoranda contra on May 10, 2007 at 2:34pm. The memorandum contra includes a Certificate of Service, which indicates a copy of the motion was served upon Ray King, attorney for Appellant at 107 W. Johnstown Rd, Suite D, Gahanna, Ohio, by ordinary U.S. Mail, on May 10, 2007. In it's Judgment Entry filed May 14, 2007, the trial court notes, "Before this Court for its consideration are objections to Magistrate's Decision filed by the juvenile, William Shade Miller, on May 4, 2006, supplemental objections to Magistrate's Decision filed by the juvenile on April 26, 2007 and a Memorandum Contra Defendant's objections filed by the Licking County Prosecuting Attorney on May 10, 2007." May 14, 2007 Judgment Entry at 1, unpaginated. Following receipt of the judgment entry, neither Appellant nor his counsel advised the trial court *Page 10 
they had not received the State's memorandum contra. There is nothing in the record to affirmatively demonstrate service was not perfected.
 {¶ 21} Assuming, arguendo, Appellant was not served with the State's memoranda contra, we find Appellant was not prejudiced thereby. In its May 14, 2007 Judgment Entry, the trial court specifically states it "has undertaken an independent examination of the Magistrate's Decision and has carefully reviewed the entire transcript of the proceedings including all exhibits admitted into evidence at the hearing. The court has carefully considered the arguments of counsel." May 14, 2007 Judgment Entry at 1-2, unpaginated. The trial court is required to conduct such a review pursuant to Civ. R. 53. Additionally, it is well recognized a court speaks only through its journal. The fact the trial court agreed with the arguments made by the State does not, in and of itself, establish the trial court merely rubberstamped the State's memorandum contra.
 {¶ 22} Appellant's first assignment of error is overruled.
 II {¶ 23} In his second assignment of error, Appellant contends the trial court erred in failing to find reasonable doubt existed. Specifically, Appellant submits the State failed to prove beyond a reasonable doubt the value of the items Appellant was convicted of stealing.
 {¶ 24} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N .E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would *Page 11 
convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 25} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 678 N.E.2d 541, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 26} Appellant was found delinquent by reason of having committed theft, in violation of R.C. 2913.02(A)(1), which would be a misdemeanor if committed by an adult. The statute provides:
 {¶ 27} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: *Page 12 
 {¶ 28} "(1) Without the consent of the owner or person authorized to give consent." R.C. 2913.02(A)(1).
 {¶ 29} While the value of the items is not an element of the crime of theft, the value must be proven in order to determine the degree of the offense. State v. Bradford, Greene App. No. 2002 CA 125, 2004-Ohio-769. Upon review of the entire transcript of the proceedings, we find competent, credible evidence to establish Appellant committed the offense and to establish the value of the property was under $500; therefore, warranting a conviction of a misdemeanor theft.
 {¶ 30} Appellant's second assignment of error is overruled.
 {¶ 31} The judgment of the Licking County Court of Common Pleas is affirmed.
 Hoffman, P.J., Gwin, J. and Wise, J. concur. *Page 13 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 1